## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00648-RPM

RETHA APPLEGATE and ERNEST APPLEGATE

       Plaintiffs,

v.

HEATH CONSULTANTS, INC.

       Defendant.

_____

## DEFENDANT HEATH CONSULTANTS, INC.'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

_____

Defendant Heath Consultants, Inc. ("Heath") submits the following Motion for Summary Judgment and Brief in Support, and states as follows:

### D.C.COLO.L.CIV.R.7.1 CERTIFICATION

Local Rule 7.1(b) does not require conferral prior to filing a Rule 56 motion, however, undersigned counsel for Heath conferred with Plaintiffs' counsel and the present motion is opposed.

## I.      INTRODUCTION

Heath is a manufacturer and consulting firm that provides a variety of products and services for the utility protection and damage prevention markets.  Heath's headquarters is based in Houston, Texas and it employs workers on projects nationwide, including in Denver, Colorado. On or about August 10, 2010, Plaintiff Ernest Applegate ("E. Applegate") began his employment with Heath's Denver office as a Field Technician.  On or about November 2, 2010, Plaintiff Retha Applegate ("R. Applegate") began her employment with Heath's Denver office as an Administrative Assistant.

Notably, both Retha and Ernest Applegate (collectively, "Plaintiffs") were well over the age of 40 when they were hired by Heath.

In their Complaint, Plaintiffs assert three claims against Heath: (i) Violation of the Age Discrimination in Employment Act, 29 U.S.C. s. 623 et seq. ("ADEA"); (ii) Violation of the Colorado Anti-Discrimination Act - Age Discrimination pursuant to C.R.S. § 24-34-402 ("CADA"); and (iii) Retaliation.  As further discussed herein, Plaintiffs' claims should be dismissed because they are time barred as Plaintiffs failed to timely file their charges of unlawful employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  Even assuming, *arguendo*, that Plaintiffs' charges with the EEOC were timely filed (which they were not), their claims must still fail because they were terminated for legitimate, non-discriminatory and non-retaliatory reasons.  As such, given that the Plaintiffs' claims lack any merit, summary judgment is appropriate.

## II.       STANDARD OF REVIEW

"The purpose of a motion for summary judgment pursuant to Fed.R.Civ.P. 56 is to assess whether trial is necessary."  *Chung v. El Paso Cnty.*, 115 F. Supp.3d 1242, 1252 (D. Colo. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  As noted by the *Chung* Court, the initial "burden is on the movant to show the absence of a genuine issue of material fact." *Id*. (citations omitted).  "An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party."  *Id*. (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, "[a] fact is material if it might affect the outcome of the case under the governing substantive law." *Id*.   In circumstances where the party moving for summary judgment is not required to carry "the ultimate burden of persuasion at trial, the 'movant may make its prima facie

demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. (citation omitted).

Where the moving party is successful in carrying its "initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor." *Id*. (citations omitted).  Of note, "[c]onclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence."  *Id*. (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). In other words, "[t]he nonmoving party's evidence must be more than 'mere argument of [his] case or a denial of an opponent's allegation' or it will be disregarded." *Id*. (citing 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed 1998)).

### III.    STATEMENT OF UNDISPUTED FACTS

1.     Prior to his employment with Heath, E. Applegate, who was born on May 18, 1953, was employed by the Lakewood (Colorado) Police Department where he spent over 20 years as a police officer.  [Dep. Tr. of E. Applegate, 30:21-23 (attached hereto as Exh. A).]

2.     Meanwhile, prior to beginning her employment with Heath, R. Applegate, who was born on March 21, 1957, worked as a paraprofessional in the special education program at Platte Canyon High School (Bailey, CO) where she was a victim of the tragic school shooting incident that occurred on September 27, 2006.  [Dep. Tr. of R. Applegate, 16:6 – 24:24. (attached hereto as Exh. B).]

LEGAL\28876832\1

3.     As a result of being involved in the school shooting incident, R. Applegate suffered from emotional distress for which she sought and received medical treatment. *Id*.  In addition, R. Applegate filed a workers' compensation claim relating to her injury(ies) associated with the school shooting incident.  [*Id*.]

4.     After their respective careers in the aforementioned fields, the Plaintiffs began working for Heath.  Namely, on or about August 10, 2010, E. Applegate began his employment with Heath's Denver office as a field technician.  [Complaint, ¶¶ 4 and 8 (Doc. 3).]

5.     Subsequently, on or about November 2, 2010, R. Applegate joined her husband at Heath as an administrative assistant.  [Complaint, ¶¶ 3 and 9.]

6.     Plaintiffs were both over the age of 40 when they were hired by Heath – R. Applegate was 53 years old; and E. Applegate was 57 years old.

7.     Approximately three years after commencing their employment with Heath, on or about Friday, November 22, 2013, R. Applegate asked Heath project manager Keith Monnig if one of the Heath crew leaders could assist her with making hard copies of data entries relating to Heath's payroll, which was one of her responsibilities as an administrative assistant. [*See* Complaint, ¶ 18.]

8.     Mr. Monnig did not respond to R. Applegate's request for extra help as it was the typical practice (*i.e.*, R. Applegate's responsibility) for her to make the copies on her own.  [*See* Dep. Tr. of R. Applegate, 105:16 – 106:14 (testifying that Mr. Monnig did not respond to her request for extra help); *id*. at 109:7-10 (testifying that it was the typical practice for R. Applegate to make the copies on her own).]

9.      On Saturday, November 23, 2013, Heath crew leader Jason Camper worked with R. Applegate in order to assist her with making data entries into Heath's system for the purpose of "finishing up the payroll for that week." [Dep. Tr. of R. Applegate, 106:23 – 109:10.]

10.     As mentioned above, once the data entry task was complete, R. Applegate was responsible for making copies of said data entries on the following work week for submission to Heath's client(s) on the morning of Tuesday, November 26, 2013.  [Dep. Tr. of R. Applegate, 108:2-12 (testifying that it was her responsibility to make copies of the data entries); *id*. at 109:25 – 110:13 (testifying that the copies should have been completed by the morning of Tuesday, November 26, 2013).]

11.     On Monday, November 25, 2013, R. Applegate once again asked Mr. Monnig for help in making copies of the data entries, which, again, were due on the morning of Tuesday, November 26, 2013.  [*See* Complaint, ¶ 19 (alleging, "Ms. Applegate reminded Monnig that help would be needed to make copies in order for payroll to be completed[.]")]

12.     Fully aware of the impending deadline, and the time required to complete the copying task (4-1/2 hours), R. Applegate opted to leave the office on Monday, November 25, 2013, without making the copies that were due the following morning.  [Dep. Tr. of R. Applegate, 109:25 – 112:8.]

13.     R. Applegate then failed to meet her deadline on the morning of Tuesday, November 26, 2013. [Dep. Tr. of R. Applegate, 109:25 – 110:13; *id*. at 112:5-8 (testifying that she did not complete the copies by the deadline).]

14.     On the morning of Tuesday, November 26, 2013, Mr. Monnig summoned R. Applegate to his office to discuss her failure to meet her deadline.  [Complaint, ¶ 21; Dep. Tr. of K. Monnig, 85:5 – 89:12 (attached hereto as Exh. C).]

5

15.     Subsequently, on Wednesday, November 27, 2013, Mr. Camper approached R. Applegate to inquire about an error on a technician's paperwork.  [Complaint, ¶ 24; Dep. Tr. of R. Applegate, 122:21-25.]

16.     In response to Mr. Camper's inquiry, R. Applegate "pushed her chair away from her computer and put her hands up in a defensive manner and said, 'Stop. Leave Me alone.'" [Complaint, ¶ 24 (emphasis added).]

17.     Immediately after R. Applegate's exchange with Mr. Camper, Mr. Monnig summoned her to his office where he admonished her for yelling in the office. [Complaint, ¶ 24; Dep. Tr. of R. Applegate, 130:8-14; Dep. Tr. of Keith Monnig, 91:7 – 95:22.]

18.     After leaving Mr. Monnig's office, R. Applegate approached Mr. Camper to apologize about this particular incident.  [Dep. Tr. of R. Applegate, 129:12 – 130:7.]

19.     R. Applegate then returned to Mr. Monnig's office, at which point, he asked her to contact E. Applegate to come pick her up and take her home for the day. [Dep. Tr. of R. Applegate, 138:9 – 140:2.]

20.     After approximately 15-20 minutes, E. Applegate arrived to take R. Applegate home for the day.  [Dep. Tr. of R. Applegate, 141:16-18.]

21.     After the Plaintiffs had exited the building (and before they had left for the day), E. Applegate opened the door to the Heath office in order to "defend" his wife, and to give his supervisor a piece of his mind, by asking Mr. Monnig, "in a loud voice", to "step outside." [Dep. Tr. of E. Applegate, 126:8 – 128:25.] After doing so, the Plaintiffs left for the day without further incident.  [*Id.* at 130:16-23.]

LEGAL\28876832\1

22.    Heath employees Ronald Warren, Kevin Evetts, Jason Camper, Keith Monnig and Phil Harvey all completed incident reports relating to Plaintiffs' transgressions in the workplace on Wednesday, November 27, 2013 – all of which note Plaintiffs' confrontational behavior.  [*See, e.g.,* Affidavit of Becky Jimenez (attached hereto as Exh. D) at Exh. D-1, Incident Report Form, Ronald Warren (Nov. 27, 2013) (stating, in part, "I overheard Retha yelling at Keith in an adjacent room. While in my presense [sic], Ernie entered the room and aggressively challenged Keith to get [sic] outside alone."); Incident Report Form, Kevin Evetts (Nov. 27, 2013) (stating, in part, "I overheard an extremely loud confrontation between[…]Retha Applegate and[…]Keith Monning[…]. A short time later Keith was confronted by Ernie Applegate[…]. Ernie[…]began yelling at Keith in front [sic] several employees."); Incident Report Form, Jason Camper (Nov. 27, 2013) (stating, in part, "Retha went back up front and started yelling at Keith.  When[…]Ernie showed up he then yelled at Keith in a threatening tone."); Incident Report, Keith Monnig (Nov. 27, 2013) (stating, in part, "She was quite upset and starting [sic] screaming that she was working to [sic] hard on payroll with no help[…]. When Ernie arrived, he stormed into the office, and demanded that I talk with him[…]. He was yelling in a [sic] quite hostile, and threatening manner and I will admit I felt concerned for Ron's and my safety."); Incident Report Form, Phil Harvey (Dec. 3, 2013) (stating, in part, "[Mr. Camper] asked [R. Applegate] for the paperwork and she said that she'd already took care of it again and her attitude was combative and uncooperative.").

23.    Upon arriving at Heath on Monday, December 2, 2013, Mr. Monnig informed the Plaintiffs that they were being placed on a paid suspension as a result of their insubordinate behavior the prior week; to which E. Applegate responded (twice – once in a loud voice): "We're not going down without a fight," adding, "I haven't learned to grovel well."  [Dep. Tr. of R. Applegate, 150:12

7

– 151:19 (stating, "The second time, yes, he said it louder so the others behind that, the ones that are in there could hear it."); Dep. Tr. of E. Applegate, 131:6 – 134:24 (stating, "[W]hen I turned and said, 'I said we're not going down with (sic) a fight' was louder than when I was standing outside the door[.]").]

24.     E. Applegate's hostile actions on December 2, 2013, were also noted in incident report forms prepared by Heath employees. [*See, e.g.*, Affidavit of Becky Jimenez (attached hereto as Exh. D) at Exh. D-2, Incident Report Form, Ronald Warren (Dec. 2, 2013) (stating, in part, "Ernie then yelled at  Keith [sic] they would not go out 'without a fight.' He then repeated the threat yelling it at all crew leaders and several surveyors located in the meeting room."); Incident Report Form, Jason Camper (Dec. 2, 2013) (stating, in part, "Ernie got very loud while exclaiming that they 'weren't going to go down without a fight.'").]

25.     Subsequently, upon arriving at Heath on Tuesday, December 3, 2013, Plaintiffs were notified that their employment with Heath was being terminated, effective immediately.  [Complaint, ¶ 32.]

26.     Given E. Applegate's temperament, Mr. Monnig instructed Mr. Camper to summon the police to escort the Plaintiffs from the property. [*See* Dep. Tr. of J. Camper, 101:20 – 102:25 (attached hereto as Exh. E); Dep. Tr. of K. Monnig, 134:3 – 137:14; Dep. Tr. of E. Applegate, 146:25 – 151:4.]

27.     When the Arapahoe County Sheriff's deputies arrived, they observed E. Applegate with an "elevated demeanor", displaying "an explosive temper for nearly 15 minutes"; and R. Applegate suffering from what appeared to be a panic attack.   [*See* Arapahoe County Sheriff's Office Offense Report (Dec. 12, 2013) (attached hereto as Exh. F)].

28.     Mr. Applegate advised the responding deputies that he was "a former cop, [who] worked 5 years with Adcom and 20 with Lakewood P.D." [*Id.*]

29.     Of note, according to E. Applegate's employee evaluations from the Lakewood (Colorado) Police Department, he occasionally had "outbursts and [a] negative persona around some supervisors" while working at the police department, for which he was once placed on a 180-day probationary period and, on another occasion, suspended. [Dep. Tr. of E. Applegate, 35:16 – 59:21.]

30.     E. Applegate had similar outbursts throughout the course of his employment with Heath; and, in particular, between the dates of November 27, 2013, and December 3, 2013. [*See* Statement of Undisputed Facts, ¶¶ 21-27, *supra*.]

31.     Throughout the course of their employment with Heath, Plaintiffs never lodged any specific complaints with the company relating to age discrimination. [*See* Dep. Tr. of E. Applegate, 174:12 – 175:9 (stating, in part, "Q. At any point before your termination in December of 2013, did you make a complaint about discrimination to Heath? […]. A. No, I did not."); Dep. Tr. of R. Applegate, 186:2-19 (stating, in part, "Q. What did you do that you believe caused you to be retaliated against? A. I made a comparison to how I was treated in comparison to how Mary Strawn had been treated. […]. Q. Okay.  Any other complaints that you made that you feel resulted in retaliation against you? A. I don't recall at this time, sir.  I don't think so.")]

32.     Moreover, Plaintiffs both testified that they could not recall any specific instances where anyone in Heath management made an inappropriate comment concerning an employee's age. [*See* Dep. Tr. of E. Applegate, 175:13 – 176:3; Dep. Tr. of R. Applegate 98:4 – 100:3.]

33.     Heath maintains a Personal Integrity and Conduct Policy whereby "employees are expected to conduct themselves in a manner that ensures a positive, safe, and efficient work

environment." [*See* Heath's Employee Policy Manual 2012 – Personal Integrity and Conduct Policy (attached hereto as Exh. G).]

34.     Per the clear terms of Heath's Personal Integrity and Conduct Policy, improper conduct may result in corrective action or termination of employment. [*Id.*]

35.     Heath's Personal Integrity and Conduct Policy further provides, in part:

> Major offenses are those so grave in nature that a single offense may justify taking immediate, formal corrective action, including termination, without prior formal warning. Any MAJOR offense may require suspension of an employee pending an investigation and review of the situation; discharge may be appropriate upon the first violation.  Discharge is normally enacted in cases of MAJOR offenses or where previous efforts to bring about correction have failed.

> [*Id.* (emphasis in original).]

36.      Major offenses include: 1. "Fighting with, threatening, harassing, including sexual harassment, or intimidating any individual. [...]. 10. [D]isorderly conduct, including actions that interfere with the work of other employees, clients, or vendors that restricts production or disrupts normal work environment. [...]. 12. Insubordination. [...]. 14. Deliberate misconduct or belligerence in the performance of duties. 15. Refusal to perform properly assigned work by a supervisor, deliberately delaying or restricting production[.]"  [*Id.*]

37.     As a result of their employment with Heath being terminated on December 3, 2013, Plaintiffs initiated the process to file charges of unlawful employment discrimination with the EEOC.

38.     Namely, on September 29, 2014 (almost one year after Plaintiffs' employment with Heath was terminated), the EEOC received a letter from Plaintiffs' counsel, which enclosed R. Applegate's EEOC intake questionnaire, and requested the EEOC to "file an administrative

complaint on behalf of [Plaintiffs.]"  [*See* Letter from Colin E. Moriarty, Attorney, Joanne Underhill & Associates, P.C. to EEOC (Sept. 26, 2014) (attached hereto as Exh. H).]

39.     According to the evidence in the record, after submitting the aforementioned letter to the EEOC, R. Applegate filed her unperfected charge of discrimination with the agency on October 6, 2014. [*See* EEOC Notice of Charge – Charge No. 541-2015-00021 (R. Applegate) (attached hereto as Exh. I); and E. Applegate filed his unperfected charge on October 9, 2014.  *See* EEOC Notice of Charge of Discrimination – Charge No. 541-2015-00119 (attached hereto as Exh. J).]

40.     Subsequently, at the EEOC's request, Plaintiffs' counsel submitted another letter to the EEOC on behalf of the Plaintiffs on October 24, 2014 (received by the EEOC on October 27, 2014), which purported to enclose both of the Plaintiffs' signed and notarized charges of discrimination ("Perfected Charge").   [*See* Letter from Shannon Salcedo, Paralegal, Joanne Underhill & Associates, P.C. to Tamara West, Investigator, EEOC-Denver Field Office (Oct. 24, 2014) (attached hereto as Exh. K); Dep. Tr. of EEOC, 87:13-19 (stating, "A.  So you contact the [charging party], conduct your intake interview, draft the Form 5, send it to the charging party for signature.   When it comes back signed, at that point it becomes a formalized charge of discrimination.") (attached hereto as Exh. L).]

41.     According to the EEOC, E. Applegate's initial Perfected Charge was deficient.  As a result, the EEOC asked E. Applegate to execute and submit another charge form with the appropriate information.  [Dep. Tr. of EEOC, 120:11 – 122:1.]

42.     Given that E. Applegate's initial Perfected Charge was deficient, on November 4, 2014 (again at the EEOC's request), Plaintiffs' counsel submitted yet another letter to the EEOC on behalf of the Plaintiffs, enclosing E. Applegate's final Perfected Charge of discrimination, which,

this time, included the correct information.  [*See* E-mail from Shannon Salcedo, Paralegal, Joanne

Underhill & Associates, P.C. to Tamara West, Investigator, EEOC-Denver Field Office (Nov. 4,

2014) (attached hereto as Exh. M); Dep. Tr. of EEOC, 119:14 – 120:10.]

43.     Based on the foregoing, the EEOC received R. Applegate's and E. Applegate's

Perfected Charges on October 27, 2014 and November 4, 2014, respectively.

44.     Of note, the EEOC testified that it would have dismissed the Plaintiffs' respective

charges had they failed to file their Perfected Charges.  [Dep. Tr. of EEOC, 136:7 – 138:12.]

## IV.     ARGUMENTS AND AUTHORITIES

A.     Plaintiffs' Have Failed to Meet a Condition Precedent to Filing Suit

As a threshold matter, it is important to note that "the obligation to demonstrate timeliness

in filing a charge is a condition precedent to suit and thus a burden for plaintiffs to carry." [*Montes*

*v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007) (citations omitted).]  Thus, it must follow

that dismissal is appropriate where "plaintiff's Petition does not allege that she **timely** filed a charge

of discrimination[.]"  [*See*, *e.g.*, *Brown v. Glanz*, 2013 WL 6909959 at * 3 (N.D. Okla. Dec. 31,

2013) (emphasis in original).]  Wholly absent from Plaintiffs' Complaint are any allegations that

they timely filed a charge with the EEOC.  For this reason alone, Plaintiffs' claims should be

dismissed.   Assuming, *arguendo*, that the Court finds Plaintiffs' Complaint sufficient on its face,

their claims should still be dismissed as they were untimely.

B.     Plaintiffs' Charges are Time Barred

It is undisputed that Plaintiffs' employment with Heath was terminated on December 3, 2013.

[*See* Statement of Undisputed Facts, ¶ 25.]  Thus, Plaintiffs' respective charges with the EEOC were

due on or before September 28, 2014.  [*See* 42 U.S.C. § 2000e-5(e) (stating, in part, "[C]harge shall

be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]"); *see also* Dep. Tr. of EEOC, 44:5-12 (stating, in part, "based on date of harm, the record had to be received – or the charge had to be received by September 28th."")] The EEOC's first notice from the Plaintiffs concerning their allegations of discrimination against Heath was received on September 29, 2014.    [*See* Statement of Undisputed Facts, ¶ 38.] As such, Plaintiffs' claims are time-barred as their unperfected charges were filed at least 301 days after the alleged discriminatory act(s).

According to the EEOC's testimony, however, given that the Plaintiffs' deadline to file their respective charges fell on Sunday, September 28, 2014, the agency accepted the documents that were submitted on behalf of the Plaintiffs the following Monday, September 29, 2014, as timely filed. [*See*, *e.g.,* Dep. Tr. of EEOC, 50:8-25; 139:17 – 140:14.] Assuming this Court gives deference to the EEOC's unilateral decision to alter the filing deadlines that were promulgated by Congress, Plaintiffs' claims are still time-barred as the EEOC did not receive their charges until after September 29, 2014.

As noted by the Tenth Circuit, "while the contours of the requirement to file a charge may appear straightforward, we have not resolved what type of document constitutes a charge for the purposes of Title VII." [*Semsroth v. City of Wichita*, 304 Fed.Appx. 707, 712 (10th Cir. 2008) (emphasis added).] The *Semsroth* court pointed out that the Supreme Court has "addressed what constitutes a charge for the purposes of the Age Discrimination in Employment Act (ADEA)." [*Id.* (citing *Federal Express Corp. v. Holowecki*, 128 S. Ct. 1147 (2008)).]   Namely, "a document constitutes a charge if it (i) provides the minimum information the regulations require, and (ii) can 'be reasonably construed as a request for the agency to take remedial action to protect the employee's

rights or otherwise settle a dispute between the employer and employee.'" [*Id*. at 713 (citation omitted).]

In *Semsroth*, one of the questions presented was whether the intake questionnaires submitted to the EEOC on behalf of the plaintiffs could be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.  [*Id*. at 712-14.] The three plaintiffs in *Semsroth* took the position "that their EEOC intake questionnaires qualif[ied] as charge documents because they constitute[d] requests for the EEOC to take action on the alleged discrimination." [*Id*. at 712.]  The *Semsroth* court only "partially agree[d]." [*Id*.]  Namely, the court found that "[s]tanding alone, [the] questionnaires cannot reasonably be construed as 'a request for the agency to take remedial action' because they relate only factual information about the [plaintiffs'] allegations of discrimination and make no requests of the agency." [*Id*. at 713 (citing *Holowecki*, 128 S. Ct. at 1159-60 ("holding that an intake questionnaire constituted a charge because of an attached affidavit that stated '[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment ....'") (emphasis added).]

Similarly, standing alone, the portion of the Plaintiffs' letter and questionnaire (submitted on behalf of the Plaintiffs on September 26, 2014, received by the EEOC on September 29, 2014), which the EEOC relied on in determining that a charge had been filed, cannot reasonably be construed as a request for the agency to take remedial action.  Namely, the EEOC testified that, under its procedures, the first paragraph of this particular letter "is a charge."  [*See* Dep. Tr. of EEOC,

78:13 – 79:1[1]; *see also* Dep. Tr. of EEOC, 157:11 – 158:1[2].]  Markedly absent from this first paragraph, which (again) the EEOC testified it relied on in concluding that the letter and attachments amounted to a charge, is a request that the agency take remedial action.

For these reasons, the EEOC erroneously accepted this letter and attachments as Plaintiffs' respective charges of discrimination.  In fact, and even more telling, the EEOC testified that it is the agency's practice to dismiss a charge if they do not receive a complainant's Perfected Charge on an EEOC Charge of Discrimination form after making two requests for same. [*See* Statement of Undisputed Facts, ¶ 44.]  The EEOC did not receive R. Applegate's Perfected Charge until October 27, 2014 (329 days post-termination); and it did not receive E. Applegate's perfected charge until November 4, 2014 (337 days post-termination). [*Id.*, ¶43.]  For these reasons, Plaintiffs failed to timely file their charges; and, as a result, their claims are time-barred.

In an attempt to support its decision of accepting Plaintiffs' September 26, 2014 letter and attachments thereto as timely charges, the EEOC testified that, because R. Applegate (or someone on her behalf) checked a box on the intake questionnaire that was attached to the letter, indicating "I want to file a charge", the questionnaire, standing alone, amounts to a charge. [Dep. Tr. of EEOC, 86:11 – 87:11].  This is contrary to the law.  *See Semsroth* 304 Fed.Appx. at 713; *see also Holowecki*,

---

[1] "Q. Can you tell me what your understanding is of what it means to issue a charge of discrimination? […]

A. I didn't write the letter.  However, for EEOC purposes, the purpose of this letter and the attached information sheet is to file an administrative complaint on behalf of our clients […] for age and sex discrimination against their former employer.  Under our procedures, this is a charge."

[2] "Q. What were the contents of this letter that your agency concluded meant that a charge of discrimination was filed on behalf of Retha and Ernest Applegate?

A. Quote, The purpose of this letter, and the attached information sheet, is to file an administrative complaint on behalf of our clients […] for age and sex discrimination, hostile workplace, and retaliation against their former employer, Heath Consultants, Inc."

128 S. Ct. at 1159-60 (emphasis added) (finding "that an intake questionnaire constituted a charge <u>because of an attached affidavit</u> that stated '[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment ….'")).]   If, however, the Court finds that Plaintiffs' September 26, 2014 letter in conjunction with R. Applegate's intake questionnaire are sufficient to meet the charge requirements, it is undisputed that E. Applegate did not submit an intake questionnaire with said letter. [*See* Statement of Undisputed Facts, ¶ 38.]   For these reasons, the Court should, at the least, dismiss E. Applegate's claims.

C.       <u>Plaintiffs' Claims Must be Limited to Events that Occurred on December 3, 2013</u>

Even assuming, *arguendo*, that the Court finds the Plaintiffs' letter received by the EEOC on September 29, 2014, should be considered and construed as a charge of discrimination on behalf of both Plaintiffs, only those acts that occurred within 300 days before September 29, 2014 (on or after December 3, 2013) are actionable.  As noted by the Supreme Court, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the […] 300-day time period after the discrete discriminatory act occurred." [*National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113 (2002); *see also Semsroth*, 304 Fed.Appx. at 710 (considering only those allegations involving events that fall within 300 days from when each plaintiff filed her charge).] Accordingly, if the Court finds that the Plaintiffs timely filed their charges of discrimination with the EEOC, which they did not, the only actionable incident is their termination on December 3, 2013.

D.       <u>Plaintiffs Were Terminated for Legitimate, Non-Discriminatory and Non-Retaliatory Reasons</u>

Finally, should the Court find that Plaintiffs' claims are not time-barred, Heath maintains that the claims should fail as the Plaintiffs were terminated for legitimate, non-discriminatory and non-retaliatory reasons.   Each of these discrete issues will be addressed in turn.

### i.      Plaintiffs' Age Discrimination Claims Lack Legal Merit and Fail as a Matter of Law

In evaluating claims under the ADEA and CADA where a plaintiff relies on circumstantial evidence to establish discrimination, the Tenth Circuit uses the three-step analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  [*See Bodaghi v. Dep't of Natural Res.*, 995 P.2d 288, 297-98 (Colo. 2000); *see also Fuller v. Seagate Tech., LLC*, 651 F. Supp. 2d 1233, 1242-43 (D. Colo. 2009).]  At the first step, the plaintiff must establish a *prima facie* case of discrimination – that is (1) "she is 'within the protected age group'; (2) she 'was doing satisfactory work'; (3) she 'was discharged'; and (4) her position was filled by a younger person."  [*Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 528-30 (10th Cir. 1994) (citations omitted).]

If the plaintiff establishes the *prima facie* requirements, "the burden of production moves to the defendant" which has to set forth a legitimate nondiscriminatory reason for the plaintiff's termination.  [*Id*.]  "If the defendant articulates a legitimate, nondiscriminatory reason for its action, then the burden of persuasion moves back to the plaintiff."  [*Id*.]  The plaintiff must then "show that age was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext."  [*Id*. (citation omitted).]

Assuming, without conceding, that the Plaintiffs are able to establish *prima facie* cases of age discrimination, their claims must still fail because Heath had legitimate, non-discriminatory reasons for terminating Plaintiffs' employment – *i.e.*, Plaintiffs created a hostile work environment in the days leading up to their termination.  Namely, it is undisputed that E. Applegate exhibited

aggressive and combative behavior towards his supervisor. [*See, e.g.,* Statement of Undisputed Facts, ¶ 21 (asking his supervisor, in a loud voice, to "step outside"); *id*., ¶ 23 (exclaiming "We're not going down without a fight," and "I haven't learned to grovel well" after being placed on a paid suspension).]  Similarly R. Applegate was terminated because she, too, exhibited aggressive and combative behavior towards her co-workers and supervisor.  [*See* Statement of Undisputed Facts, ¶ 16 (pushing her chair away from her computer and throwing her hands up in a defensive manner, exclaiming, "Stop. Leave me alone."); *id*., ¶ 22 (Heath employees' incident report forms regarding R. Applegate yelling at Keith Monnig); Dep. Tr. of K. Monnig, 99:2-9 (stating, in part, "She was shaking her firsts and yelling at Jason in a whisper in front of the crew."]  In addition, R. Applegate was terminated because she deliberately failed to timely execute her job responsibilities.  [*See* Statement of Undisputed Facts, ¶¶ 12-14.]

Given that Heath is able to articulate legitimate, non-discriminatory reasons for Plaintiffs' termination, Plaintiffs bear the burden of proving that the reasons advanced by Heath are merely pretextual.  [*Cone*, 14 F.3d at 528-30 (10th Cir. 1994) (citation omitted).]  "A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely motivated the employer … or that the employer's proffered explanation is unworthy of credence.'" [*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).]  Further, to demonstrate pretext, the Tenth Circuit "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason."  [*Reynolds v. School District No. 1 Denver*, 69 F.3d 1523, 1535 (10th Cir. 1995).]

Plaintiffs have not provided a single factual allegation to support their claims that they were terminated because of their age.   In fact, the evidence in the record clearly demonstrates that Plaintiffs were terminated for their obstreperous and insubordinate behavior in the days leading up to their termination. [*See* Statement of Undisputed Facts, ¶¶ 12-27.]  It is also important to note that Plaintiffs both testified that they never lodged any specific complaints relating to age discrimination while working for Heath; nor could they recall any specific instances where anyone in management made an inappropriate comment concerning an employee's age. [*Id*., ¶¶ 31-31.] Moreover, Plaintiffs' age discrimination claims are undermined by the fact that they were both over the age of 40 when they were hired by Heath.  [*Id*., ¶ 6; *see also*, *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (stating, "[P]laintiff's claim of a general bias against workers over forty years of age is undermined by the fact that plaintiff was fifty years old when hired.").]  For these reasons, Plaintiffs' claims under the ADEA and CADA should be dismissed.

### ii.      Plaintiffs Retaliation Claims Lack Legal Merit and Fail as a Matter of Law

To establish a *prima facie* case of retaliation, a plaintiff must "show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."  [*Hinds v. Spring/United Mgt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008) (citing *Montes v. ail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)).]  Once the plaintiff-employee makes a *prima facie* showing, the defendant-employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; to which the plaintiff-employee must respond by demonstrating that the defendant-employer's asserted reasons for the

adverse action are pretextual.  [*See Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1219-20 (10th Cir. 2003).]

General complaints are not protected activity.  [*See, e.g.*, *Hinds*, 523 F.3d at 1203 (citations omitted) (stating, "General complaints about company management and one's own negative performance evaluation will not suffice.").]  Rather, for the complaint "to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA."  [*Id.* (citation omitted).]  Put differently, the plaintiff-employee must make it clear that the complaint is of and concerning discrimination made unlawful by the ADEA.  [*Id.*]

The Plaintiffs did not engage in any protected activity as they did not lodge any complaints with Heath concerning age discrimination.  [*See* Statement of Undisputed Facts, ¶ 31.]  In addition, Plaintiffs could not recall a single instance where someone in Heath management made an inappropriate comment concerning an employee's age.  [*Id.*, ¶ 32.]  Plaintiffs allege that they lodged complaints concerning younger coworkers not being admonished for their failure to follow proper procedures and inappropriate language/behavior by co-workers.  These generalized complaints do not constitute protected activity because they do not oppose or protest any unlawful employment practices under the ADEA (or CADA).  In other words, Plaintiffs' complaints, if any, did not complain about discriminatory conduct; and, more specifically, discriminatory conduct relating to their age.

In addition, the Supreme Court recently held that an employee's protected opposition to unlawful treatment by an employer must be the but-for cause of the adverse retaliatory action for a retaliation claim to succeed.  [*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013);

*see also Finn v. Suncor Energy*, No. 12-CV-3024-JLK, 2014 WL 2993647 at *6 (D. Colo. July 3, 2014).]   As such, even if Plaintiffs are successful in establishing *prima facie* cases for their age discrimination and retaliation claims, which they cannot, their claims must nevertheless fail, as a matter of law, because they cannot establish the retaliation was the "but-for" cause of their termination.

Moreover, as discussed above, Heath had legitimate, non-discriminatory and non-retaliatory reasons for terminating Plaintiffs' respective employment.  Specifically, despite Heath's attempts to progressively discipline Plaintiffs for their workplace transgressions (per Heath's Personal Integrity and Conduct Policy [*see* Statement of Undisputed Facts, ¶¶ 33-36]), Plaintiffs continued to escalate the situation; in turn, warranting termination of their employment.  [*Id.*, ¶¶ 12-27.]   In fact, if Plaintiffs had simply left the office on Wednesday, November 27, 2013 (after Mr. Monnig and R. Applegate discussed her failure to meet her deadline and the incident involving Mr. Camper), there would not have been a need for additional discipline.  Instead, Plaintiffs continued to yell at their co-workers and supervisors. [*Id.*, ¶¶ 14-22.] Heath then afforded Plaintiffs another opportunity to save their employment by placing them on a paid suspension on Monday, December 2, 2013. [*Id.*, ¶ 23-24.]   Again, this likely would have been the full extent of the discipline; however, Plaintiffs continued to escalate the situation. [*Id.*]  At this juncture, Plaintiffs left Heath with no other option but to terminate their employment.

## V.      <u>CONCLUSION</u>

As demonstrated by the factual information and arguments presented herein, Plaintiffs failed to timely file their charges of discrimination with the EEOC and, as a result, their present claims against Heath are time-barred.  Even if the Court finds that the Plaintiffs' claims are not time-barred,

21

said claims lack merit and, as a result, must fail as a matter of law.

**WHEREFORE**, based on the foregoing, it is Heath's position that Plaintiffs' claims are time-barred and without merit.  Thus, Heath requests that the Court dismiss Plaintiffs' Complaint in its entirety, and for such other and further relief as the Court deems just and proper.

Dated this 16th day of February, 2017:

Respectfully submitted,

**COZEN O'CONNOR, P.C.**

By:  *s/ Neema J. Kassaii*
        Neema J. Kassaii (CO – #45140)
        Cozen O'Connor, P.C.
        707 17th St., Suite 3100
        Denver, CO  80202
        Telephone: (720) 479-3900
        FAX: (720) 479-3890
        E-mail: nkassaii@cozen.com
        *Attorney for Defendant Heath Consultants, Inc.*

        David L. Barron (TX – #21117)
        Cozen O'Connor, P.C.
        LyondellBasell Tower
        1221 McKinney St., Suite 2900
        Houston, TX 77010
        Telephone: (832) 214-3900
        FAX: (713_ 512-5196
        E-mail: dbarron@cozen.com
        *Attorney for Defendant Heath Consultants, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2017, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will send notification of such filing to the following e-mail addresses:

John W. McKendree, #1209
7582 East 121st Drive
Thornton, CO 80602
jwm@mckendreelaw.com
CMRRR: 7015 0640 0004 4718 5998
*Attorney for Plaintiffs*

*s/ Neema J. Kassaii*
Neema J. Kassaii